Mc

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-10-414
JAW - CUM- 9/30 - 011

MARYAM PILIPO,

Plaintiff

v.

NIGHTY OTTI,

Defendant

STATE OF MAINE
Cumberland ss Clerk's Office

SEP 30 2011

RECEIVED

JUDGMENT

## INTRODUCTION

This case arises out of broken finger that Maryam Pilipo (Pilipo) sustained on July 19, 2009. At trial, Pilipo testified that Nighty Otti (Otti) broke her finger when Otti twisted it at a community gathering called by the elders in the Sudanese community to resolve a dispute. Otti denies doing this and testified that when a melee broke out she left the building with her elderly mother. This dispute focuses then on what, if anything, did Otti do to Pilipo on July 19, 2009.

In Count I of the Complaint, Pilipo alleges that Otti intentionally or recklessly broke Pilipo's finger and is thereby liable for assault and battery. In Count II, Pilipo contends that Otti negligently broke Pilipo's finger. In Count III, Pilipo contends that Otti acted with malice toward Pilipo when she broke her finger and seeks punitive damages. The court heard testimony from seven witnesses, including Pilipo and Otti. All of the witnesses spoke as their primary language Acholi[1], requiring the court to depend on an interpreter throughout the trial.

---

[1] "Acholi, also spelled Acoli, also called Gang or Shuli, ethnolinguistic group of northern Uganda and southernmost Sudan." Acholi. (2011). In *Encyclopædia Britannica*. Retrieved from http://www.britannica.com/EBchecked/topic/3628/Acholi.

## FACTS

The court makes the following findings of fact by a preponderance of the evidence. Both Pilipo and Otti were originally from Sudan, but left Sudan when the civil war broke out. Pilipo came to the United States through Egypt and Otti came through Uganda. Pilipo and Otti knew each other in Africa. Both are Acholi but from different tribes. Since coming to Portland, they live in the same neighborhood.

Pilipo and Otti worked together in 2009 at Barber Foods. While at Barber Foods Pilipo complained to her employer about an incident in which Otti pushed her. Pilipo experienced the push as an intentional act, but Otti said it was an accident. Approximately one month later, on July 19, 2009, Pilipo and Otti were at the community gathering called by the elders. Pilipo sat with Lena Alonyo (Alonyo), her daughter Agnes, and Marta Robby (Robby) in the front of the room. Otti sat with her mother and father in the back of the room. Otti's sisters sat midway in the room. One of the disputes discussed at the gathering was between Agnes and Alonyo and Martina Augustine and Otti. Pilipo was at the meeting to testify as a witness on behalf of Alonyo.

Just before 4:00 P.M. at melee broke out. It is unclear how the fighting began and who was involved in it, but it appears more likely than not that one disagreement began while the Chief was asking Pilipo some questions that she did not understand. When the questions were repeated to Pilipo and she was asked what is you response to these questions, Flora, one of Otti's sister, objected. Then, Cloretta, Otti's other sister, got up and moved toward Robby, when Otti broke through and tried to fight with Robby who was pulled away by one of the elders. Pilipo bent down to grab her bag with her right hand. As

2

Pilipo reached for her bag, Otti came up very fast behind Pilipo and grabbed Pilipo's left hand, twisting her arm in an upward direction breaking Pilipo's third finger and bringing Pilipo to the floor. Alonyo was getting out of her seat when Otti attacked Pilipo from behind. The assault happened so quickly that the first thing Alonyo was aware of was the fact that Pilipo was on the floor screaming, "Nighty you are killing me." Vincent, Otti's friend, pulled her away.

Pilipo, Alonyo and Robby went to Alonyo's son's house where they called the police to report the attack. The police arrived and spoke to Pilipo. Although Pilipo was in a lot of pain, she refused any medical treatment at that time. The police did not speak Acholi and none of the individuals, including Pilipo, spoke much English. There was no interpreter to assist the police in their interviews. Nevertheless, the police understood sufficiently to next interview Otti.

The police approached Otti, who was assisting her mother get into her car. According to Otti, the police asked her a series of questions including, "do you know Pilipo," "did you beat her," "did you fight," "did you break her hand?" Otti responded, "I didn't even quarrel with her, why would I break her hand?" The police advised Otti to go home.

The next morning, a friend drove Pilipo to the Emergency Room at Maine Medical Center (MMC). An attending physician and a resident examined Pilipo. Although the medical record discloses some discrepancies about how the injury occurred and defendant argues that the medical record shows that the plaintiff reported that she broke her finger when she "tripped and fell," the totality of the evidence reveals that the injury occurred at the community meeting when Otti grabbed Pilipo's hand and twisted and broke Pilipo's left finger. The first medical report was generated as a result of Pilipo's treatment in the emergency

3

room on July 20, 2009. The description of the cause of the injury is consistent with Pilipo's testimony that Otti, a coworker, broke her finger at the community meeting. The ER Physician Record, prepared by the resident and signed also by the attending physician, states the injury occurred at a community event as a result of a "pull/twist injury in altercation with coworker to nondominant middle finger." That record also observes "the exam was limited by friend translator." The attending physician reports in the Emergency Room Department Report "patient is a 41-year old female who was in an altercation at work when they grabbed her left middle finger and twisted it." The discrepancy that Otti relies on does not appear until subsequent medical records maintained by Orthopedics Associates (OA). OA's records report that Pilipo sustained the injury when she "slipped and fell." This court concludes that any discrepancies arise from the fact that the medical providers at MMC were relying on a friend and the medical providers at OA were relying on Pilipo's son to interpret all that Pilipo said. The weight of the evidence reflects that from the beginning Pilipo reported to the Police and to the ER at MMC that Otti, a coworker, twisted and broke her finger at a community gathering.

At the Emergency Room, Pilipo was diagnosed with "a minimally displaced comminuted fracture of the proximal shaft of her metacarpal" and placed in a splint with a referral to Dr. Chance at OA for a possible pinning. Dr. Chance diagnosed her with a "left third middle phalanx spiral fracture." On July 23, 2009, Pilipo underwent surgery and pins were inserted to stabilize her fracture. On August 27, 2009, the pins were removed and she underwent therapy from September 23 to November 10, 2009. She did not return to work at Barber Foods because she could not work in a cold environment without feeling

4

pain in her hand because of the injury. Although Pilipo could work in a different environment, she was out of work until approximately five months ago when she obtained a housekeeping job.

## DISCUSSION

a.    Assault and Battery

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement of the Law, Second, Torts, § 13 (1965). The Maine Law Court uses "the term *assault and battery* idiomatically to refer to a consummated battery." Simmons, Zillman and Gregory, Maine Tort Law, § 1.04 at 7 (1999)(emphasis in the original).

The court concludes that the evidence establishes by a preponderance of the evidence that Otti ran up behind Pilipo, grabbed her finger, twisted it in an upward manner so as to twist her finger and caused Pilipo to fall to the floor. These acts are intentional and offensive. Whether or not, Otti intended to break Pilipo's finger, Otti's conduct demonstrated that she almost certainly intended to cause serious injury to Pilipo. The court finds by a preponderance of the evidence that Otti committed assault and battery against Pilipo when she twisted and broke Pilipo's finger in the manner described above.

b.    Negligence

Negligence requires proof that a person did something that an ordinary, careful person would not do. Without a doubt an ordinary, careful person would not run up behind a person, grab and twist her finger in an upward motion as Otti did here. The court finds by a preponderance of the evidence that

5

at best Otti was negligent when she broke Pilipo's finger and at worst she committed an assault and battery.

c.    Punitive Damages

Punitive damages may only be awarded if Pilipo proves, by clear and convincing evidence, that Otti acted with malice. Malice is conduct motivated by ill will towards the plaintiff or proof that Otti engaged in deliberate conduct which, while motivated by something other than ill will toward any particular person, is so reprehensible that malice toward a person injured is a result of the conduct can be implied. Whether or not Otti's conduct was motivated by malice toward Pilipo specifically or malice is implied because Otti's conduct was sufficiently reprehensible conduct that would inevitably injury someone, the court finds by clear and convincing evidence that Otti acted with malice and that she is responsible to Pilipo for punitive damages.

### DECISION

Judgment is granted on Counts I and II to Pilipo against Otti for medical damages in the amount of $6,224, and lost wages in the amount of $7,680 and pain and suffering and loss of enjoyment of life in the amount of $20,000. Judgment is granted on Count III for Pilipo against Otti for punitive damages in the amount of $10,000.


The entry is:

On Counts I and II, Judgment for the Plaintiff in the amount of $ 33,904 in damages for medical, lost wages and compensatory damages, together with costs and interest.

6

On Count III, Judgment for the Plaintiff in the amount of $10,000 in punitive damages, together with costs and interest.

Date: September 29, 2011

Joyce A. Wheeler, Justice

PORSC-CV-2010-414

Plaintiff's Attorney Stephen Whiting Esq.
Defendant's Attorney John Branson Esq.

7